UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEGGETT & PLATT, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV788 CDP |
| | ) | |
| VUTEK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Defendant Vutek, Inc. seeks a protective order directing plaintiffs Leggett & Platt, Inc. and L&P Property Management Company (together "L&P") to destroy all copies of two documents that Vutek alleges constitute inadvertently disclosed work product. Vutek also asks that all references to the documents in any depositions be stricken, and seeks an order that L&P cannot use the documents in its case.

The two documents contain the results of tests of Vutek's machines and were performed by a Vutek employee in June of 2005. Vutek's lawyers knew they were producing the documents to L&P at the time they did so, but they did not realize until later that the tests had been conducted at the direction of Vutek's former counsel. After L&P's lawyers questioned Vutek's witnesses about the documents during depositions, the Vutek lawyers conducted an investigation and ultimately requested return of the documents. I agree with L&P that Vutek has waived any

work-product protection that may have attached to these documents. Accordingly, I will deny Vutek's motion. This order does not, however, reopen discovery on this issue or indicate how, if at all, the documents may be used at trial.

**Background**

The two disputed documents are results of tests conducted in June of 2005. One of the documents apparently contains 250 pages, and the other consists of the last five pages of a thirty-five page document. On January 24 and 26, 2006, Vutek's present counsel produced over 9,000 pages of documents for L&P, including the disputed documents. A Vutek lawyer had reviewed the production in advance, and Vutek was aware that it was producing the documents to L&P. At that time, Vutek's counsel did not know that the test were done at the request of Vutek's former counsel. This fact was not discovered by Vutek's counsel until a March 1, 2006, deposition of a Vutek employee. That witness indicated that the tests may have been performed at the request of Vutek's counsel because of this lawsuit. Vutek's current counsel investigated, and determined that in fact Vutek's former counsel had requested the tests shortly after learning of the suit.

On March 7, 2006, Vutek's counsel informed L&P that the test results constituted attorney work product and that Vutek's production of these documents was inadvertent, and requested that L&P either return or destroy them. Counsel for

L&P responded on March 14, 2006, indicating that L&P did not believe that the test results contained privileged information.  In a letter dated March 21, 2006, Vutek's counsel again informed L&P that Vutek was reserving its rights under the work-product doctrine with respect to the test results.

On March 30, 2006, L&P deposed one of Vutek's expert witnesses.  In preparation for the deposition, Vutek provided the witness with numerous documents, including exhibits that L&P had used at an earlier deposition or hearing. The L&P exhibits that Vutek gave its witness included one of the disputed documents, although Vutek's counsel did not realize that at the time.  The witness acknowledged in his deposition that he reviewed the test results, but he stated that he was unsure how to interpret the data out of context.

The parties did not discuss the documents again until May 4, 2006, when Vutek's counsel called counsel for L&P to again request the return of the documents.  L&P's counsel refused, and shortly thereafter Vutek filed this motion.

## Discussion

Vutek has not provided any explanation for why both its current counsel and its employees failed initially to recognize that the documents were protected work product.  I will nevertheless assume for purposes of the motion that they were, in fact, results from tests performed at the direction of counsel as part of the attorney's

defense of this lawsuit, and therefore would be entitled to the protection of Rule 26(b)(3), Fed. R. Civ. P. The question then becomes whether their production waives the work-product protections.

Rule 26(b)(3) was added to the Federal Rules of Civil Procedure in 1970 to reflect the work-product doctrine as it had evolved since its recognition in Hickman v. Taylor, 329 U.S. 495 (1947). The rule provides "a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 237-38 (1975) (quoting Hickman at 508). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system." Nobles, 422 U.S. at 238. Hickman itself discussed the need for attorneys to prepare their legal strategies in privacy, without fearing that their preparation would be revealed to opposing counsel. Hickman, 329 U.S. at 510.

The protections of the work-product doctrine are not absolute. Rule 26(a)(3) states that a party can discover such documents upon a showing of substantial need and inability to obtain the information elsewhere. This ability of an opponent to overcome the work-product protections is not shared by the closely-related privilege

for attorney-client communications, which cannot be overcome simply because the opponent needs the information. As with any privilege, the protections of the work-product rule may be waived. United States v. Nobles, 422 U.S. 225, 239(1975).

Although Rule 26 sets out the standard for overcoming the work-product protection because of need, it does not contain any standard for what constitutes a waiver. Obviously, a party can intentionally waive the protections by deciding to use the material in its case, and that happens frequently. See e.g., Pittman v. Frazer, 129 F.3d 983, 987-989 (8th Cir. 1997)(holding that production of part of investigator's file only waived the work-product privilege as to items actually produced, not to the remainder of the investigator's file). Waiver also can occur when a party puts in issue its attorney's work, such as by filing an indemnification action to recover attorneys fees. Pamida, Inc. v. E. S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002). A party may waive the privilege by failing to assert it properly, such as by failing to timely object or list it on a privilege log. See, e.g., Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540 (10th Cir. 1985); St. Paul's Reinsurance Co., Ltd. v. Commercial Financial Corp., 197 F.R.D. 620, 645 (N.D. Ia. 2000). At least one Circuit Court of Appeals has held that any inadvertent production necessarily waives the protections of the rule. Carter v. Gibbs, 909 F.2d 1450 (Fed. Cir. 1990).

Vutek argues that any waiver must be intentional, relying on <u>Gundaker v. Unisys Corp.</u>, 151 F.3d 842, 848 (8th Cir. 1998). In <u>Gundaker</u>, the Eighth Circuit found no waiver, stating that "[a]lthough disclosure to an adversary ordinarily waives work-product protection, there must be an intention that the opposing party see the work product." According to Vutek, this comment indicates that an inadvertent disclosure of attorney work product can never constitute a waiver. I do not believe that <u>Gundaker</u> can be read so broadly. <u>Gundaker</u> provides little factual background about the inadvertent production, but does state that the producing party requested return of the document upon realizing its mistake, and that when the opponent gave it back, he kept a copy without telling the producing party. <u>Gundaker</u> can thus be distinguished by its facts, but more importantly, if the Eighth Circuit had intended to establish a hard and fast rule, that would be entirely inconsistent with its approach to the problem in the context of the attorney-client privilege.

In <u>Gray v. Bicknell</u> the Eighth Circuit articulated a five-factor test to determine whether an inadvertent disclosure constitutes a waiver of the attorney-client privilege. 86 F.3d 1472, 1484 (8th Cir. 1996). These factors include "(1) the reasonableness of the precaution taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the

extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error." Id. The Court reasoned that this five-factor test "strikes the appropriate balance between protecting attorney-client privilege and allowing, in certain circumstances, the unintended release of privileged documents to waive that privilege." Id. Further, "[i]t accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver." Id.

Although Gray involved the attorney-client privilege, I find its five-factor approach appropriate for analyzing the issue in the work-product context. In Gray, the Court reasoned that extreme carelessness in the disclosure of attorney-client communications can constitute a waiver of the attorney-client privilege because such conduct ignores the "core principle" of confidentiality which underlies the privilege. Likewise, I find that extreme carelessness in the disclosure of work-product materials to an opposing party offends the integrity of the adversary system that the work-product privilege is designed to promote and protect. See Pittman, 129 F.3d at 988.

Applying the Gray factors in the present case, I conclude that Vutek has waived the work-product privilege for the test results. Most importantly, Vutek did

not take adequate steps at the beginning to prevent inadvertent disclosure of these documents.  The documents were apparently not segregated within Vutek's files, because none of the producing employees or lawyers recognized their privileged nature.  The documents themselves bore no legend indicating that they were an attorney's work product, and one of them is apparently part of a larger unprivileged document, which certainly increases the likelihood that they would not be recognized as work product.  Vutek has provided no explanation for how these five pages of work product became a part of a thirty-five page document that is not work product, nor has it described any steps that were taken to protect the test results from disclosure.  It appears that either the former Vutek counsel who requested the tests took no steps to assure that the employee doing the tests understood their protected nature, or that any steps taken or instructions given were ignored by that employee.  Most importantly, previous counsel apparently took no steps to assure that Vutek's new lawyers knew about the supposedly protected testing.  Even when Vutek's new lawyers looked at the documents themselves, they apparently had no reason to suspect they were attorney work product.

Vutek also failed to take prompt measures to solve the problem once it discovered its mistake.  It was clear to Vutek as early as March 14, 2006, that L&P's counsel did not consider the test results to be privileged under the work-

product doctrine.  Vutek, however, waited two months to take this dispute to court.  Cf. Arch Coal, Inc. v. Federal Ins. Co., No. 4:05CV712 ERW, 2006 WL 139317, at *2 (E.D. Mo May 22, 2006) (finding no waiver of the attorney-client or work product privilege where the entire mistake was rectified within four days of any party learning of the mistake).  Under the circumstances, Vutek should have sought judicial relief long before it filed this motion

Further, Vutek's disclosure of one of these documents to its expert witness would also constitute a waiver of the work product privilege irrespective of the promptness of Vutek's remedial measures.  It is well-settled that "documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report."  In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001) (applying Eighth Circuit law); see also Monsanto Co. v. Aventis Cropscience, N.V., 214 F.R.D. 545, 546 (E.D. Mo. 2002).

Gray also looked to the number and extent of the disclosures, and the overriding interests of justice.  Although the number of pages may have been small relative to the entire document production, the carelessness with which Vutek handled them overrides that factor.  This case is quite different from one where privileged documents are carefully identified and segregated but then produced

because of a copying or other clerical error. See, e.g., Arch Coal at *2; United States v. Mallinckrodt, 227 F.R.D. 295 (E.D. Mo. 2005); In re Copper Market Antitrust Litigation, 200 F.R.D. 213 (S.D.N.Y. 2001).

Finally, there are no overriding interests of justice that would be served by granting Vutek the relief it seeks. There is no evidence that the documents relate in any way to the legal strategy of Vutek's current counsel, or that they played any role in Vutek's approach to this litigation. The work product protection is intended to protect the litigation process itself, by granting litigation counsel a "privileged area within which he can analyze and prepare his client's case." Nobles, 422 U.S. at 238. I see nothing in the record that indicates that granting the relief Vutek seeks would in any way promote this goal, and to do so would reward carelessness.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Vutek, Inc.'s motion for a protective order [#62] is denied, as is its motion to strike plaintiffs' sur-reply [#96].

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of July, 2006.